IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:

SCION BIOMEDICAL, INC.,
a Florida corporation,

        Plaintiff,

vs.

Allison London Brown, an individual, and
Aegis Women's Health Technologies, Inc.,
a Delaware corporation,

        Defendants,

_____/

## COMPLAINT

      Plaintiff, SCION BIOMEDICAL, INC. ("Scion"), by and through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, sues ALLISON LONDON BROWN, individually ("Brown") and AEGIS WOMEN'S HEALTH TECHNOLOGIES, INC. ("Aegis"), and alleges as follows:

### NATURE OF THE ACTION

      1.    This is an action by Scion against Brown and Aegis, for damages in excess of $75,000, exclusive of attorney's fees and costs, for (a) breach of fiduciary duty; (b) tortious interference with advantageous business relationship; and (c) fraud in the inducement.

      2.    Jurisdiction and Venue are proper in the Southern District of Florida, and in particular, in Miami-Dade County, Florida, because this is where the contracts were negotiated, communications were directed to this County, services were performed and were to be performed in this County, payments were made in this County and the injuries were suffered in this County.

1

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1332(a)(2). There is complete diversity of citizenship among the parties, because Defendants are citizens of the State of North Carolina and Plaintiff is a citizen of the State of Florida, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest, costs and attorneys' fees.

4. This Court has personal jurisdiction over the Defendants as they conducted all of the transactions related to this Complaint in Miami-Dade County, Florida and thereby do business in Miami-Dade County, Florida.

5. Venue is proper pursuant to 28 U.S.C § 1391(a) because: (a) the causes of action set forth herein accrued in whole or in part in Miami-Dade County, Florida; and (b) a substantial part of the events or omissions giving rise to the claims occurred in Miami-Dade County, Florida.

## PARTIES

6. Plaintiff, Scion, is a Florida corporation which maintains a principal place of business in Miami-Dade County Florida.

7. Defendant Brown, is an individual who resides in Raleigh, North Carolina and who is otherwise *sui juris*. At all material times hereto, Brown traveled to and conducted business in Miami-Dade County, Florida.

8. Defendant, Aegis, is a Delaware corporation which maintains a principal place of business in Raleigh, North Carolina. At material times hereto, Aegis conducted business in or directed communications related to such business to Miami-Dade County, Florida, through its chief executive officer and principal, Brown, and committed tortious conduct in this District.

## GENERAL ALLEGATIONS

A. <u>The Business of Scion</u>

9. Scion has been in business since 1996, researching, developing, manufacturing and distributing medical devices and products servicing the health care industry in the United States and foreign countries. Prior to August 2013, Scion Biomedical, Inc. was known as Scion Cardio-Vascular, Inc.

10. Among other products, Scion manufactures and sells to its distributors a medical product called the "Clo-Sur P.A.D." a/k/a "MVP 44" (the "Clo-Sur P.A.D.") and the Clo-Sur$^{Plus}$ P.A.D. a/k/a "SCV22P-AB" ("Clo-Sur$^{Plus}$ P.A.D.") Both these products have significant coagulating properties and have received FDA clearance for managing bleeding wounds such as vascular-access sites. They are especially useful for patients who have undergone certain types of surgical procedures.

11. The Clo-Sur P.A.D and the Clo-Sur$^{Plus}$ P.A.D are manufactured from a unique and high molecular weight "chitosan" that has exceptional wound healing properties if properly processed and manufactured. The molecular weight of Scion's chitosan is higher than almost any other known chitosan. Scion is the only company in the United States and one of only a few around the world that has the ability to manufacture biomedical-grade chitosan.

12. Scion owns and operates a plant that manufactures Scion's proprietary biomedical-grade chitosan.

13. The source of Scion's chitin and the methods it employs to create its chitosan are proprietary trade secrets.

14. Scion has been working on developing new products employing its high molecular weight, biomedical-grade chitosan for possible use in other medical devices/products.

B. **Brown's Background**

15.     In or about April 2011, Scion's President and Chief Executive Officer, Louis Rose ("Rose"), traveled to Alpharetta, Georgia, together with two other Scion team members, to visit a company called Chemence Medical Products, Inc. ("Chemence"), and during that visit, they met with Brown, the then acting chief executive officer for Chemence. Brown was introduced to Rose through Tara Stevenson, managing director of the The Woodward Group Limited, a long-time Scion business consultant and supporter.

16.     During that meeting, Scion's representative, Rose, learned that Brown had a Master's Degree in Polymer Chemistry and had done her graduate work on chitosan. Given Scion's plans to develop new products using its high molecular weight biomedical grade chitosan, it was especially interesting for Scion's representative to connect with Brown to see if Brown could help Scion in the future.

17.     Unfortunately, approximately one month later, when Scion's representative reached out again to Brown, he was surprised to discover that Brown had been terminated from Chemence.

C. **Scion Recruits Brown**

18.     Later, Scion was successful in recruiting Brown to join Scion Cardio-Vascular's Board of Directors in January 2012.

19.     Brown continues to serve on the Scion Board of Directors.

D. **The Memorandum of Understanding Between Brown and Scion**

20.     Not long after Brown joined Scion's Board of Directors, discussions began between Scion and Brown on how they could collaborate to develop new products for Scion and help move Scion to the next phase in its development.

21.     In early 2013, Brown disclosed to Scion that she had started another company called Aegis Women's Health Technologies, Inc., a medical device company focused on solving the problem of recurring urinary tract infections ("rUTI"). Brown specifically represented to Scion that Aegis' technology was vastly different to that of Scion's and that she would keep the business of Aegis and that of Scion completely separate.

22.     Based on her representations, Scion and Brown discussed bringing Brown in as an employee to work full-time for Scion. The idea was for Brown to eventually assume the responsibilities of Chief Strategy and Operating Officer for Scion. Before this occurred, Brown would be tasked with various duties that she had to perform over the course of six months as a consultant and contractor for the company.

23.     In March 2013, Brown requested a sample of Scion's chitosan, because she wanted to conduct some research and development regarding a chitosan-based gel.

24.     On March 28, 2013, Scion shipped 250 grams of its high molecular weight biomedical grade chitosan flakes from its plant in Raymond, Washington to Brown's lab located in Raleigh, North Carolina. Scion did not charge Brown or her company for the chitosan flakes, valued at approximately $15,000, because it was understood that Brown, as a Scion Board Director, she would share her research and development with Scion so that Scion could also benefit from the work.

25.     In keeping with their ongoing discussions regarding the development of new Scion products and the raising of capital for the company, on or about July 15, 2013, Brown and Scion executed a Memorandum of Understanding that memorialized the parties' ongoing discussions and activities concerning Brown's future employment at Scion and which outlined what Brown's duties would be over the course of the six (6) months that followed.

26. Among other things, Brown was tasked with assisting Scion in its capital raising efforts. In connection therewith, Brown agreed to help raise a minimum of $2 million for the company. Brown also agreed to help complete the Scion Strategic Product Roadmap which would include recommendations for product development, estimated costs and market acceptance/concept testing in connection with Scion's plans to expand its product lines and revenue stream with a specific focus on the wound management and scar reduction markets, she agreed to work on a business development plan for Scion which would depict required resources, both human and monetary, to accomplish the formation of a "wound care" division, including the completion of a website for Scion and to help in Scion's development of "new" products.

27. In consideration, Scion agreed to pay Brown a monthly consulting fee of $7,500 plus 1,000 shares of Scion's common stock for 75% of her available working time. In addition, Scion agreed to pay for Brown's travel and related expenses, including room and board. Brown was expected to travel back and forth between Miami, Florida and Raleigh, North Carolina and was expected to dedicate approximately 3 ½ days, or three to four full days a week, every two weeks at Scion's headquarters in Miami, Florida.

28. By virtue of her position as a Scion Board Member and interim Chief Strategy and Operating Officer for Scion, Brown was in a position of trust and had complete access to all of Scion's information, including confidential information which among other things included Scion's trade secrets for its source, processing and manufacturing of its high molecular weight biomedical grade chitosan. This information was not readily available to everyone in the company and Brown was asked to sign a non-disclosure agreement in connection therewith.

29. Scion has complied with all conditions precedent to the bringing of this action, or such conditions have been waived or excused.

## COUNT I
## BREACH OF FIDUCIARY DUTY
### (Against Allison London Brown)

30. Scion reasserts and realleges the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein and further alleges as follows.

31. This is an action against Brown for breach of her fiduciary duties to Scion.

32. At all times material to this action, Brown was a Scion Board Member and interim officer of Scion.

33. Brown's status as a Scion Board Member and interim officer of Scion gave rise to a fiduciary relationship between Brown and Scion. By virtue of her position, Brown was in a position of trust and influence over Scion, Scion's employees and Scion's shareholders. Brown was obligated to act with the utmost good faith and loyalty to Scion which she did not.

34. Brown abused her position and breached her fiduciary duty by, among other things, deliberately, without justification and dishonestly, usurping for Aegis a Scion business relationship, potentially misappropriating confidential information belonging to Scion, and upon information and belief, filing a patent application on behalf of her own company Aegis that may include chitosan-based technology.

35. As a direct and proximate result of the foregoing breaches, Scion has suffered substantial damages in excess of $75,000, in an amount to be proven at trial.

**WHEREFORE**, Scion Cardio-Vascular, Inc., demands judgment against Allison London Brown for damages, costs, interest and for such other and further relief deemed just and proper.

**COUNT II**
**TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP**
**(Against Allison London Brown and Aegis Women's Health Technologies, Inc.)**

36. Scion reasserts and realleges the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein and further alleges as follows.

37. As previously set forth, Scion had an advantageous business relationship with Professor Hudson, to develop a working relationship between Professor Hudson and Scion in the research and development of new products for Scion involving chitosan.

38. Brown was aware of this advantageous business relationship. Indeed, she was on the Scion conference call with Dr. Hudson and the entire Scion team and had intimate knowledge of the purpose for the call and what Scion hoped to accomplish with Dr. Hudson.

39. Brown intentionally and unjustifiably interfered with Scion's relationship with Professor Hudson.

40. As a direct and proximate result of Brown's intentional and unjustifiable actions, Scion is unable to engage Dr. Hudson without fearing a conflict of interest, thereby causing Scion to suffer significant damages because now its own development plans are delayed. Moreover, it is possible that Brown used Scion's confidential trade secret information in developing her own chitosan-based gel formulation and/or in her own patent application filed with the U.S. Patent & Trademark Office.

41. Brown's and Aegis' conduct was wrongful, without justification or excuse and contrary to generally accepted standards of conduct. Moreover, Brown's/Aegis' actions were intentional, willful, wanton, malicious and performed with a reckless disregard for the rights of

Scion. As such, Scion reserves the right to amend this Complaint to seek punitive damages as contemplated by Fla. Stat. § 768.72 (2011).

**WHEREFORE**, Plaintiff, Scion Biomedical, Inc., demands that judgment be entered against Allison London Brown and Aegis Women's Health Technologies, Inc., for damages, interest, attorneys' fees, costs and for such other and further relief as this Court deems just and proper.

**COUNT III**
**FRAUD IN THE INDUCEMENT**
**(Against Allison London Brown)**

42. Scion reasserts and realleges the allegations set forth in paragraphs 1 through 29 above as if fully set forth herein and further alleges as follows.

43. As previously set forth, Scion had agreed to have Brown serve on the Scion Board of Directors, and later, contracted with her to serve as an interim Chief Strategy And Operating Officer with the intent to have her be employed in the future as a full-time employee of Scion in a C-level position. In that regard, Scion and Brown entered into the Memorandum of Understanding in which Brown agreed, inter alia, to assist Scion in its capital raise efforts and to work on the "infection control platform and initiate the development of 'new' products." Brown represented to Scion and its Board of Directors that she had the ability, capacity and commitment to meet her obligations and fiduciary duty to Scion. Brown's representations to Scion and its Board of Directors, included, inter alia, that she would not act in her own interest, which included an equity interest in her company Aegis, to the detriment of Scion. Brown knew all along that she had no intention of merging Aegis into Scion on reasonable terms thereby sabotaging the capital raise, which is exactly what happened.

44. Brown knew from the beginning, as Scion later learned, that her representations were false, because she came to Scion with a plan to use Scion for her own purpose and benefit, even to the point of being detrimental to Scion.

45. Brown had the intent to induce Scion, including its leadership and its Board of Directors, to invite Brown to join the Board of Directors and then later, to serve in a greater role at Scion.

46. Scion relied on Brown's false representations to its detriment and was induced into inviting Brown to join its Board of Directors and later to take a leadership role by entering into the Memorandum of Understanding.

47. Through her representations, Scion, its leadership and Board of Directors, believed Brown, and now, Scion has suffered damages because of its justifiable reliance on her representations.

**WHEREFORE**, Plaintiff, Scion Biomedical, Inc., demands that judgment be entered against Allison London Brown for declaratory judgment that any contractual obligations Scion had to Brown be declared null and void, that Brown return all Scion shares issued to her as a Scion Board Member, that she return all payments related to her failure to complete all her obligations, and that Scion be awarded damages, interest, attorneys' fees, costs and for such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Scion demands trial by jury for all issues so triable as a matter of law.

Dated: November 21, 2013            Respectfully submitted,

By: _s/William R. Trueba, Jr._____
    William R. Trueba, Jr.
    FL Bar No. 117544
    Wtrueba@etlaw.com
    Francesca Russo
    FL Bar No. 174912
    Frusso@etlaw.com
    ESPINOSA | TRUEBA, PL
    1428 Brickell Avenue, Suite 100
    Miami, FL 33131
    Tel: 305-854-0900
    Fax: 855-854-0900
    *Counsel for Plaintiff, Scion Biomedical, Inc.*